IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MARIA ELEN BARAJAS, ET AL.,                                    PLAINTIFF

v.                        CASE NO. 4:24-cv-00318-JM

SALINE COUNTY, AR, ET AL.,                                    DEFENDANTS

## BRIEF IN SUPPORT OF MOTION TO DISMISS

COMES NOW Arkansas State Police Defendant Jay McAlister, by and through his attorneys, Attorney General Tim Griffin and Senior Assistant Attorney General Kesia Morrison, and for his Brief in Support of Motion to Dismiss, state as follows:

### I.     Introduction & Facts

Plaintiff Maria Elena Barajas filed this lawsuit under 42 U.S.C. § 1983 as personal representative of the Estate of Daniel Adrian Barajas. Doc. 1. Plaintiff's decedent, referred to as Daniel in the complaint, was involved in a fatal pedestrian motor vehicle accident on Interstate 30 in Saline County, Arkansas, on January 15, 2022. Doc. 1 at ¶¶ 23-26.

According to the allegations of the complaint, ASP Defendant Trooper Jay McAlister was notified of Daniel's death on January 15, 2022, at 6:06 a.m. Doc. 1 at ¶ 79. At 6:10 a.m., a fire engine arrived at the scene of the incident and left six minutes later. *Id*. at ¶¶ 79-80. Sometime during those six minutes, the fire engine power washed the portion of the highway where the incident occurred. *Id*. at ¶ 80. The complaint does not indicate what time Trooper McAlister arrived at the scene or whether he had knowledge of the decision to power wash the road before it happened.

The complaint indicates that Trooper McAlister chose not to perform any accident reconstruction of the impact area, the surrounding areas, or vehicles involved. Doc. 1 at ¶ 81.

Further, Plaintiff alleges Trooper McAlister took no photos of Mr. Crenshaw's vehicle or Daniel's SUV, and that Trooper McAlister failed to create a diagram to determine the SUV's final resting place. *Id*. at ¶ 82. Trooper McAlister allegedly did not determine the distance between the point of impact for the incident and the location of Daniel's SUV. *Id*. Plaintiff alleges there were no formal interviews of the Defendant Deputies; that Trooper McAlister failed to determine what happened to Daniel's personal effects; and that trooper McAlister failed to assure radio call recordings were preserved from the date of the incident. *Id*. at ¶¶ 83-84. Further, Trooper McAlister is alleged to have made certain false statements about Daniel. *See id*. at ¶ 83. Though Plaintiff makes the conclusory assertion that Trooper McAlister *knew* the statements were false, there are no factual allegations about how he had that knowledge, or when or from whom he might have acquired information to the contrary. Finally, there were some errors in Trooper McAlister's reports that mistakenly provide information from another incident. *Id*. at ¶ 86.

Plaintiff alleges Trooper McAlister conspired with the other defendants to deprive Daniel of his constitutional rights, including conspiring to conceal the true names and true nature of the Defendant Deputies traffic stop of Daniel. *Id*. at ¶ 155. Plaintiff alleges this conduct violated the Fourth and Fourteenth Amendments to the U.S. Constitution. *Id*. at ¶ 156. Plaintiff also alleges that Trooper McAlister and others violated Daniel's right of access to the courts under the First and Fourteenth Amendments. *Id*. at ¶¶ 159, 162. Specifically, Plaintiff alleges that because Daniel is unable to provide an account of what happened on January 15, 2022, and Plaintiff was not present at the time of his death, they relied on Trooper McAlister to use his skills, ASP technology, and ASP policy dictates to determine if criminal or civil prosecutions were available to Plaintiff, or if other individuals were involved in causing Daniel's death. *Id*. at ¶ 163.

## II.    <u>Standard of Review</u>

To survive a motion to dismiss under *Federal Rule of Civil Procedure* 12(b)(6), a complaint must contain "a short and plain statement of the claim *showing that the pleader is entitled to relief.*" Fed. R. Civ. P. 8(a)(2) (emphasis added). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016). Courts should consider whether there are lawful, obvious alternative explanations for the alleged conduct, because where the complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *McDonough v. Anoka County*, 799 F.3d 931, 946 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678, 682).

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all the factual allegations contained in the complaint, *Twombly,* 550 U.S. at 572, and must draw all reasonable inferences in favor of the nonmoving party. *Cole v. Homier Distrib. Co., Inc.,* 599 F.3d 856, 861 (8th Cir. 2010). The complaint, however, must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555. A district court is not required "to divine the litigant's intent and create claims that are not clearly raised" or "conjure up unpled allegations" to save a complaint. *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

### III.    <u>The claims against Trooper McAlister should be dismissed.</u>

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 against a State Defendant who is entitled to assert the defense of qualified immunity. Qualified immunity "shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Therefore, Plaintiff has not stated a claim that would entitle her to relief unless she has asserted a violation of a constitutional right, and that right was clearly established. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *see also Story v. Foote*, 782 F.3d 968, 970, 973 (8th Cir. 2015) (qualified immunity considered for the first time on appeal because it was clear on the face of the complaint that the violation alleged was not clearly established). Qualified immunity is an immunity from suit, not merely a defense to liability, and the Supreme Court has repeatedly stressed that immunity questions should be resolved at the earliest possible stage in litigation because the "'driving force' behind creation of the qualified immunity was a desire to ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery.'" *See Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987)).

To defeat Trooper McAlister's qualified immunity defense, Plaintiff must show that Trooper McAlister violated clearly established constitutional rights. Plaintiff has not plausibly or concisely alleged any constitutional violation by Trooper McAlister. As a result, the claims against Trooper McAlister must be dismissed.

**A. Trooper McAlister's investigation did not deprive Plaintiff of access to the courts.**

Plaintiff alleges Trooper McAlister's investigation deprived Daniel of access to the courts in violation of the First and Fourteenth Amendments to the U.S. Constitution. The "right of access to the courts finds support in many parts of the Constitution, including the Due Process Clause" of the Fourteenth Amendment, and the First Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002) (cited by *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005)). The Supreme Court of the United States sorted the claims into two broad categories: first, those where "the essence of the claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs." *Harbury*, 536 U.S. at 413. In such cases, "the object of the denial of access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* The second broad category "covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be taken in the future." *Id.* at 413-14. Whatever the category, the legal theory rests "on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered an injury by being shut out of court." *Id.* at 415.

***First Amendment***

To prevail on a First Amendment access to courts claim, Plaintiff "must show that the defendants acted with some intentional motivation to restrict their access to the courts." *Scheeler*, 402 F.3d at 830. The government action must be "designed" to restrict access to the courts. *Whisman v. Rinehart*, 119 F.3d 1303, 1312–13 (8th Cir.1997) (cited by *Scheeler*, 402 F.3d at 830). Plaintiff described the actions and outcome of Trooper McAlister's investigation, but made only conclusory allegations regarding some conspiracy to conceal identities of certain deputies and

otherwise prevent a thorough investigation. Plaintiff has made no plausible allegations regarding Trooper McAlister's intent, motives, or designs to prevent Daniel from having his case heard in court. As a result, the access-to-courts claim cannot proceed under the First Amendment as there was no violation of a clearly established constitutional right, and the claims against Trooper McAlister should be dismissed.

### Fourteenth Amendment

Access-to-courts claims may also arise under the due process clause of the Fourteenth Amendment. *See Scheeler*, 402 F.3d at 831 (citing *Wilson v. Lawrence Cnty., Mo.*, 260 F.3d 946, 955-57 (8th Cir. 2001)). "Intentionally or recklessly failing to investigate other leads or manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause." *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012). The Eighth Circuit has recognized the following areas of reckless investigation: "(1) coercing a suspect's confession; (2) 'purposely ignor[ing] evidence suggesting ... innocen[ce]'; and (3) 'systemic pressure to implicate [a suspect] in the face of evidence to the contrary.'" *Id*. "Negligence and even gross negligence is not enough because the state action must be 'truly egregious and extraordinary' to shock the conscience, [] and so severe as to amount to 'brutal and inhumane abuse of official power[.]" *Id*. (internal citation omitted). "The 'recklessness standard normally contains a subjective component." *Id*.

Similar to the First Amendment analysis, Plaintiff has provided no allegations as to Trooper McAlister's subjective intent or motivations. Again, there are only conclusory allegations that Trooper McAlister conspired based on the events and outcomes of the investigation. But, even if Plaintiff wishes the investigation had gone differently and even if more could have been done, "negligence and even gross negligence is not enough" to state a claim. *Livers*, 700 F.3d at 351.

Trooper McAlister's conduct would have to be "truly egregious and extraordinary to shock the conscience." *Id*. (cleaned up).

Plaintiff alleges Trooper McAlister arrived at the accident scene after Daniel's death—it is unclear whether it was during or after the fire truck washed the road where the accident occurred. Doc. 1 at ¶ 80. With the accident scene thus disturbed, Trooper McAlister apparently did not create a diagram to determine the locations of the vehicles as they sat when the incident had just occurred. *See* Doc. 1 at ¶ 82. Nor did Trooper McAlister take measurements between vehicles that apparently had already been moved. *See* Doc. 1 at ¶ 82. Plaintiff claims Trooper McAlister knowingly made false statements, but there are no facts to support this conclusory statement. *See* Doc. 1 at ¶ 83. Finally, Trooper McAlister failed to secure Daniel's personal effects, and failed to assure that radio call recordings were preserved from the incident. Doc. 1 at ¶ 83-84.

Courts should consider whether there are lawful, obvious alternative explanations for the alleged conduct, because where the complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *McDonough v. Anoka County*, 799 F.3d 931, 946 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678, 682). Here, there are lawful, obvious alternative explanations for Trooper McAlister's conduct: it is likely that based on the information available to Trooper McAlister at the time, this was a tragic accident, and there were likely no facts that triggered Trooper McAlister to treat the incident cite as anything more than an accident scene. There are no facts alleged to support a conclusion that Trooper McAlister personally knew of Daniel's history—medical, social, or otherwise—nor that he was informed of such by anyone else after he arrived at the scene of the incident.

In determining whether officers like Trooper McAlister are entitled to qualified immunity, "[c]ourts must not judge them with the '20/20 vision of hindsight.'" *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 615 (2015). Here, undoubtedly Plaintiff would prefer a more thorough investigative file. At most, though, this investigation was negligent, and negligence is not enough. Under either the First or Fourteenth Amendment, there was not a violation of a clearly established constitutional right, and Trooper McAlister is entitled to qualified immunity.

**B.  Trooper McAlister did not participate in a civil conspiracy.**

To succeed on a civil-conspiracy claim under Section 1983, a plaintiff must plausibly allege that:

> (1) that the defendants conspired, (2) with the intent to deprive [him] of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that [he] was injured or deprived of having and exercising any right or privilege of a citizen of the United States.

*Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 421 (8th Cir. 2017) (quoting *Crutcher–Sanchez v. Cty. of Dakota*, 687 F.3d 979, 987 (8th Cir. 2012)). There must be sufficient factual specificity and support to suggest a meeting of the minds. *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988). "Mere speculation or conjecture is insufficient to prove a civil conspiracy." *Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 421 (8th Cir. 2017). "Mere cooperation between entities is not evidence of *specific facts* that show a meeting of the minds." *Mendoza*, 849 F.3d at 422 (cleaned up) (emphasis in *Mendoza*).

Plaintiff has failed to plead with specificity or factual support that there was a meeting of the minds or offer sufficient allegations to conclude that there was. Plaintiff "makes only vague references to a conspiracy without alleging any particular or specific facts suggesting that [Trooper McAlister] was acting beyond the scope of [his] authority or for his own benefit." *See Boyd v. Harrison,* No. 2:19-CV-00119-KGB, 2020 WL 4591462 (E.D. Ark. June 8, 2020), aff'd, 838 F.

App'x 215 (8th Cir. 2021) (citing *Crutcher-Sanchez*, 687 F.3d at 987). Moreover, Trooper McAlister had nothing to gain by conspiring to deprive Daniel of access to the courts. *See Mendoza*, 849 F.3d at 422 (no civil conspiracy where, among other things, there was no evidence defendants had anything to gain by conspiring against plaintiff). The civil conspiracy claims against Trooper McAlister should be dismissed.

### IV.    CONCLUSION

Trooper McAlister is entitled to qualified immunity because Plaintiff has failed to allege a violation of a clearly established constitutional right. Trooper McAlister's investigation may not have met Plaintiff's standards, but it did not violate either the First or Fourteenth Amendment to the U.S. Constitution. Further, Plaintiff did not allege with specificity or particularity any facts to support her claim of civil conspiracy. As a result, the claims against Trooper McAlister should be dismissed.

WHEREFORE, Arkansas State Police Defendant Jay McAlister, respectfully request this court grants his motion to dismiss and for all other just and proper relief to which he may be entitled.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By:    Kesia Morrison
       Ark Bar No. 2015244
       Senior Assistant Attorney General
       Office of the Arkansas Attorney General
       323 Center Street, Suite 200
       Little Rock, AR 72201
       Phone: (501) 682-3997
       Fax: (501) 682-2591
       Email: kesia.morrison@arkansasag.gov

*Attorneys for State Defendant*