IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MARIA ELENA BARAJAS, Personal
Representative of the Estate of
DANIEL ADRIAN BARAJAS, deceased,                                    Plaintiff

v.                                    Case No.  4:24CV318

SALINE COUNTY, ARKANSAS,
a body politic,
HUNTER THOMPSON, Individually,
SULLIVAN SULZBERGER, Individually,
CHRISTY BIDDLE, Individually,
KATE HAWTHORN, Individually,
HARLEY SOWELL, Individually,
JAKE SCOGGINS, Individually,
JOEY SHAMLIN, Individually,
RODNEY WRIGHT, Individually,
R. ALLYN WEST, Individually,
KEVIN CLEGHORN, Individually,
CHEEMA CARRIERS CORP., a Canadian
Corporation,
MOHAMMED MERCHANT, and
JOHN DOES 1-5                                                       Defendants

**ORDER**

Pending is the motion for summary judgment filed by the Separate Saline County Defendants, Hunter Thompson, Sullivan Sulzberger, Kate Hawthorn, Harley Sowell, Jake Scoggins, Joey Shamlin, Christy Biddle, Kevin Cleghorn, Richard Allyn West and Rodney Wright, in their individual capacities, and Saline County, Arkansas (referred to collectively herein as the "Separate County Defendants"), docket # 62.  Plaintiff has filed a response and the Separate County Defendants have filed a reply.  For the reasons set forth herein, the motion is GRANTED.

Plaintiff filed her first Amended Complaint on November 20, 2024, alleging under 42 U.S.C. §1983 and state law that her decedent's constitutional and state law rights were violated

on the morning of January 15, 2022 when he was killed after walking into the travel lanes of Interstate 30 with a blanket on his head. Plaintiff makes the following claims against the Separate County Defendants: Count 1 excessive force in violation of the Fourth Amendment against the Defendant Deputies; Count 2 a violation of the Fourteenth Amendment's Due Process Clause, Special Relationship-State Created Danger against the Defendant Deputies; Count 3 a violation of the Equal Protection Clause, Racial Profiling against Thompson and Sulzberger; Count 4 a Monell and Supervisory Liability claim against Saline County and Rodney Wright; Count 5 a violation of the Equal Protection clause, intentional investigation failures against Sowell, Defendant Coroners, Jarvis, Bragg, McAllister and Bailey;[1] Count 6 a violation of the First and Fourteenth Amendment, denial of access to the courts claim against Sowell, Defendant Coroners, Jarvis, Bragg, McAllister and Bailey; Count 8 a Wrongful Death claim pursuant to Ark. Code Ann. §16-62-102(a) and (b) against the Defendant Deputies and Count 9 a Survival Claim pursuant to Ark. Code Ann. §16-62-101(a)(1) against the Defendant Deputies. Separate County Defendants argue that they are entitled to qualified immunity and summary judgment.

## Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact

---

[1] Plaintiff subsequently dismissed all claims against Separate Defendants Dakotah Bailey, Jay McAlister, Chris Jarvis, Tim Bragg and the John Doe Defendants.

because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*,"[to] point out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Facts

On the morning of January 15, 2022, the Plaintiff's decedent, Daniel Barajas walked into the right lane of I-30 Eastbound with a blanket on his head. He was struck by several vehicles resulting in his death. It is undisputed that at the time of his death, none of the Saline County Defendants were present at the scene.

3

Prior to his death, at or around 4:30 a.m. January 15, 2022, Saline County Deputy Hunter Thompson observed a white SUV parked on the 106 on ramp east of I-30 Eastbound in the middle of the road still running. Deputy Thompson testified that initially he could not see into the vehicle due to fogged windows so he radioed for backup. (ECF 64-2 at 7). Deputy Sullivan Sulzberger arrived to assist and while approaching the vehicle, the Deputies were able to see movement in the back of vehicle that appeared to be a person wiping the window. (Id. at 8). As they approached the vehicle the Deputies identified a Hispanic male laying down on his side in the back trunk space. (Id.) No other person was in the vehicle. (Id.) Deputy Thompson opened the hatch from the outside and the male fell out of the vehicle and jumped up to his feet. (Id.). When Deputy Thompson closed the back hatch, the man stated "you just shut that on her hand." When asked who he was talking about because no one else was in the vehicle, the man seemed confused. (Id.). Deputy Sulzberger asked the man what he'd been doing and he told the Deputies that he'd been sleeping. The Deputies observed that he was shaking and sweating and that his eyes were red and swollen. They asked him if he could see and he said "yes." (Id. at 8-9).

The Deputies retrieved the man's identification which identified him as Barajas and ran it through the police database . While Deputy Thompson was running the ID, Deputy Sulzberger talked to Barajas, who refused to answer questions or simply stated that he did not know anything when asked about his trip, destination, how long he had been traveling or with whom he may have been traveling. He seemed dazed and confused. He also said that the vehicle was not his and that he had not been driving. (Id. at 9). Deputy Sulzberger asked Barajas if he had taken anything, but Barajas said that he was fine and was just having an issue with "eye contact." (Id.). Barajas asked to stand because the ground was cold and Deputy Sulzberger ushered him back to Thompson's vehicle, at this time Barajas doubled back toward his vehicle and began

4

talking in an argumentative tone. When asked who he was speaking to, Barajas said he was talking to his friend. When the Deputies said there was no one there, Barajas appeared confused. (Id.). Deputy Sulzberger told Barajas to walk back toward Thompson's vehicle, but while doing that, he took a sharp turn and attempted to walk past the Deputies and into the lane of the on ramp into traffic. The Deputies took his arm and had him sit near Thompson's vehicle. (Id.). Deputy Sulzberger called dispatch and asked them to send medical to the scene advising that Barajas was having possible hallucinations and that he attempted to walk into traffic. Shortly thereafter, an ambulance crew arrived and evaluated Barajas. (Id.).

Deputy Christy Biddle, arrived on the scene with her K9 just before the EMT's arrived. (Id. at 10). Deputy Thompson advised Deputy Biddle that Barajas appeared to be under the influence, had denied consent to search his vehicle and stated that he was not driving and the vehicle was not his. (Id. at 10). Barajas was confirmed to be the registered owner of the vehicle. (Id.). Deputy Biddle instructed her K9 Cain to make his way around the vehicle conducting a free air sniff. (Id. at 11). Cain alerted three times. (Id. at 8). In light of the alerts by the K9, the Deputies searched Barajas' vehicle. No illegal items or evidence of criminal activity were found.

While the K9 performed the free air sniff, the EMT's evaluated Barajas inside the ambulance. The EMS report states that Barajas appeared to be altered but was alert and oriented and was able to answer all of their questions. (ECF 79-2 at 2). Barajas refused transport. When Barajas exited the ambulance he appeared calm and coherent. The EMT's advised that he may have been under the influence but his demeanor completely changed when he was in the ambulance. (ECF 64-2 at 11). The EMT's advised that Barajas was calm and no longer appeared disoriented or confused. (Id.). The EMT's left the scene.

5

Deputy Thompson told Barajas he needed to move the vehicle onto the shoulder and Barajas said that Thompson could move it. (Id. at 8). The deputies assisted Barajas with moving his vehicle off of the roadway while Barajas contacted his girlfriend on the phone to pick him up. (Id. at 11). Barajas advised the deputies that he was going to wait with his car for his girlfriend to come. (Id.) Barajas was advised by Deputy Thompson that nothing had been located in the vehicle and that he was free to wait in his vehicle for his girlfriend. (Id.). As Deputies Thompson and Sulzberger were preparing to leave the scene, Barajas was no longer talking to himself and stated to the deputies that he may have acted strangely earlier because he had minimal sleep and that he usually felt strange after being awakened suddenly. (Id. at 8).

As the Deputies left the scene, Deputy Thompson told Barajas not to drive and Barajas said that he would not and that he would wait on his girlfriend to arrive. (Id.). When Deputies Thompson, Sulzberger, and Biddle left the scene, Barajas was getting into the passenger seat of his vehicle to wait on his girlfriend. (Id.).

Lt. Hawthorn and Lt. Sowell arrived on the scene about the time the search of the vehicle had concluded. (Id. at 11). Lt. Hawthorn made contact with Deputy Thompson and was advised that Barajas had been cleared and would not be transported by medical. (Id. at 7). After the scene was cleared by Thompson and Sulzberger, Lt. Hawthorn was walking to her patrol unit and observed Barajas closing his passenger door on his vehicle and walking around on the edge of the roadway. Barajas was still talking on his phone. Lt. Kate Hawthorn gave Barajas directions to JJ's truck stop and specifically told Barajas not to make an attempt to cross I-30. (Id. at 12). Barajas acknowledged Lt. Hawthorn and began walking toward the truck stop. (Id at 7). All the deputies had left the scene by approximately 5:51 a.m. (ECF 64-2 at 25).

At approximately 5:58 a.m. Barajas walked into the right lane of I-30 with a blanket on his head where he was hit by multiple vehicles. (Id. at 27). The investigation into the death of Daniel Barajas was led by State Trooper Dakotah Bailey. Deputy County Coroner Allen West was called to the scene to investigate, and upon his arrival, he spoke with Trooper Bailey and was shown the point of impact and the scene. (ECF 64-3 at 6). After viewing and photographing the scene and hearing the reports of events, Deputy Coroner West concluded that the manner of death was suicide. (Id. at 6).

<u>Discussion</u>

Separate County Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity. Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). " 'A clearly

7

established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." *Id*. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful—in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

<u>Count 1 Excessive Force</u>

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 681 (8th Cir. 2019) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). Plaintiff asserts that she is "entitled to [an] inference that Daniel Barajas was an Excessive Force Victim." Plaintiff argues that it is "reasonable to infer [that the Defendant deputies] lost their temper over Daniel's conduct and assaulted him, rendering him dazed and confused, and causing him to wander onto the interstate." However, Plaintiff offers no evidence of excessive force and admitted in her deposition that she had "no information" to support her claim. (ECF 64-1 at 4). Plaintiff has failed to raise a genuine dispute of material fact to support

8

her excessive force claim. *See Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to survive summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, (1986)). Here, there is not even that scintilla of evidence to support an excessive force claim.

<u>Count 2 Fourteenth Amendment Due Process Clause- Special Relationship-State Created Danger</u>

Plaintiff claims that the defendant deputies owed the Plaintiff's decedent a duty to protect under the special relationship or state created danger theory. As a general rule, state actors are not liable for failing to save individuals in life-threatening situations. The due process clause is not "a guarantee of certain minimal levels of safety and security" and it does not "impose an affirmative obligation on the State to ensure that [its citizens'] interests do not come to harm through other means." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195(1989). However, "the state owes a duty to protect individuals if it created the danger to which the individuals are subjected." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) (citation omitted). State officials "create[ ] the danger" faced by an individual when they "act affirmatively to place [him] in a position of danger that he ... would not otherwise have faced." *S. S. v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000) (en banc). The due process clause may also be implicated when a special custodial or other relationship is created or exists between an individual and the state. *Gregory v. City of Rogers.*, 974 F. 2d 1006, 1010 (8th Cir 1992).

Plaintiff argues both exceptions to the general rule apply here. First, they claim that at all relevant times including up to the time of his death Barajas was in the custody of the Defendant deputies. Specifically, Plaintiff argues that because Thompson told Barajas that he could not drive Barajas remained in custody. Plaintiff also claims that the defendant deputies affirmatively

9

placed Barajas in a position of danger he would not have otherwise faced when they told him he could not drive and left him at his vehicle.

Under the state-created danger theory, Plaintiff must prove 1) they were members of a limited, precisely definable group, 2) the deputies' conduct put them at significant risk of serious, immediate, and proximate harm, 3) the risk was obvious or known to the deputies, 4) the deputies acted recklessly in conscious disregard of the risk, and 5) in total, the conduct shocks the conscience. *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005).

It is undisputed that at the time of Barajas's death the defendant deputies were not present. The question then turns to whether leaving the decedent in or near his vehicle with instructions to not drive caused Barajas serious, immediate, and proximate harm, which was known or obvious to the deputies and the deputies acted recklessly in conscious disregard of the risk, such that their conduct shocks the conscience. Under the facts of this case Plaintiff cannot meet this burden. Although Barajas appeared impaired at the initial time of the encounter with the deputies, it is undisputed that by the end of the encounter he was calm and coherent. Barajas had refused transport offered by the paramedics and told the officers he planned to wait on his girlfriend. The officers left him near his vehicle with directions as to how to safely walk to a rest stop. *See Gladden v. Richbourg*, 759 F.3d 960, 966–67 (8th Cir. 2014) (granting qualified immunity to officers who left plaintiff out in the cold because the plaintiff was not so extremely intoxicated that it was obvious to officers that he could not walk or make decisions for himself). The deputies did not take an active role in placing Barajas in harm's way. Despite the tragic consequences, the defendants did not violate a clearly established due process right.

Plaintiff also argues the defendants owed him a duty to protect because he remained "in custody" up until the time of his death. "[W]hen the State takes a person into its custody and

holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200. This "affirmative duty to protect arises not from the State's knowledge of the individual's predicament ... but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200. "[C]ustody is effected for purposes of the Fourteenth Amendment only when the state 'so restrains an individual's liberty that it renders him unable to care for himself.' " *Gladden v. Richbourg*, 759 F.3d 960, 965 (8th cir. 2014) (quoting *DeShaney*, 489 U.S. at 200). Plaintiff offers no facts to suggest the Barajas was unable to act on his own behalf at the time of his death. The undisputed facts demonstrate that Barajas told the deputies he intended to wait for his girlfriend to arrive and that Lt. Hawthorn had given Barajas directions on how to get to the rest stop. Plaintiff offers no evidence that Barajas was "so restrained after the deputies left the scene instructing him not to drive, that it rendered Barajas unable to care for himself.

  <u>Count 3 Equal Protection Clause- Racial Profiling:</u>

  Plaintiff claims that Deputies Thompson and Sulzberger violated Plaintiff's decedent's equal protection rights by racial profiling. Allegations of a traffic stop based on the plaintiff's race is cognizable Equal Protection claim. *Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003). To prove such a claim requires proof of both discriminatory effect and discriminatory purpose. *Id.* "When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Id*.

  Plaintiff has offered no proof of such discriminatory effect and purpose. The undisputed facts demonstrate that when Deputies Thompson and Sulzberger encountered the decedent's vehicle it was stopped running in the middle of the on-ramp to the interstate. Thompson stated

that he requested Sulzberger's assistance based on the fact that the was initially unable to see into the vehicle. Plaintiff has offered no evidence to suggest that the deputies actions in approaching the vehicle and engaging with Barajas and were motivated by the decedent's race.

Next, Plaintiff argues that the manner in which the encounter was conducted, specifically conducting a dog sniff of the vehicle's exterior was motived by the decedent's race and not based on reasonable suspicion of other criminal activity.   However, Thompson testified that he developed reasonable suspicion based on the way Barajas was acting, the fact that he was driving an out of state vehicle, denying that he was driving the vehicle and denying that the vehicle was his.  (ECF 79-9 p 64).  Plaintiff offers no affirmative evidence to create a question of fact as to whether the deputies actions were in fact motivated by race. *See Johnson*, 326 F.3d at 1000 ("As the non-moving parties, the [Plaintiff] must "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.") (citations omitted).

> Count 5 Equal Protection Clause- Intentional Investigation Failures and Count 6 Access to Courts

Plaintiff's claims relating to investigation failures remain pending against the County Defendant Coroners.  Plaintiff's denial of access to the courts claims remain against the County Defendants Sowell and the Defendant Coroners.   Section 1983 does not provide a cause of action on behalf of a deceased for events occurring after death, as the civil rights of a person cannot be violated after he has died. *Riley v. St. Louis Cnty. of Mo.,* 153 F.3d 627, 629 n.3 (8th Cir. 1998).  Because the investigation failures and denial of access to the Courts are based on facts alleged to have occurred entirely after decedent's death, Plaintiff cannot assert these claims either on decedent's behalf or as his heir, next of kin, or personal representative. *See, e.g., A.A. ex rel. Grady v. City of Florissant,* 2015 WL 5561830, at *4 (E.D. Mo. Sept. 21, 2015) ("[A]s a

matter of law, plaintiffs cannot proceed on claims based on any search conducted in violation of the Fourth Amendment that occurred after [decedent's] death,") (citing *Guyton v. Phillips,* 606 F.2d 248, 250 (9th Cir. 1979) ("We find that the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death. A 'deceased' is not a 'person' for the purposes of 42 U.S.C. §§ 1983 and 1985, nor for the constitutional rights which the Civil Rights Act serves to protect.")).

<u>Count 8 Wrongful Death and Count 9 Survival under State Law</u>

The Separate County Defendants argue that they are immune from suit for wrongful death or survival under Arkansas law. Ark. Code Ann. §21-9-301. The Arkansas Supreme Court has consistently held that section 21-9-301 provides immunity from civil liability for negligent acts but not for intentional acts. *City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008). Here, Plaintiff argues that she is alleging intentional and deliberately indifferent acts and omissions by the county defendants caused the death of Barajas.

Analyzing the available damages under Section 1983 the Eighth Circuit Court of Appeals specifically stated that a plaintiff "cannot shoehorn recovery available to her under such separate claims into the recovery she may receive under § 1983 for [the decedent's] injuries." *Andrews v. Neer,* 253 F.3d 1052, 1064 (8th Cir. 2001)

"Under § 1983, state actors who infringe the constitutional rights of an individual are liable only 'to the party injured.' " *Andrews v. Neer*, 253 F.3d at 1052, 1056 (8th Cir. 2001) *citing* 42 U.S.C. § 1983 (1994 & Supp. 1998). Accordingly, plaintiffs have no standing to pursue § 1983 claims in their own behalf for the wrongful death of another. <u>Id.</u> at 1063-64.

<u>Count 4 Saline County and Rodney Wright - Monell and Supervisory Liability</u>;

Plaintiff claims that the county has a custom of promoting or encouraging racial profiling. "Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny, a city may be liable under § 1983 for a constitutional violation if the violation resulted from an official municipal policy or an unofficial custom or practice". Before municipal liability can attach, "individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (quoting *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005). Since the Court has found that the Separate Defendants are entitled to summary judgment on Plaintiff's equal protection racial profiling claim, there can be no municipal liability stemming from their actions.

<u>Conclusion</u>

Separate County Defendants' motion for summary judgment is GRANTED. (Docket # 62). Separate County Defendants' motion in limine to exclude Plaintiff's proposed expert witness is DENIED AS MOOT. (Docket # 65). Plaintiff's motion for sanctions against Defendant Christy Biddle is DENIED. (Docket # 67).[2]

IT IS SO ORDERED this 16th day of October, 2025.

James M. Moody Jr.
United States District Judge

---

[2] Plaintiff's motion for sanctions is based on alleged discovery failures of Separate Defendant Biddle. However, Plaintiff filed the motion on the dispositive motions deadline, fifteen days after the discovery deadline and without first seeking an order compelling discovery. Further, Plaintiff seeks the entry of default judgment, costs and attorney's fees. The Court finds that Plaintiff failed to timely present this discovery dispute to the Court and that absent the violation of an Order compelling discovery, the extreme sanctions requested would be improper and is denied.